UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DESHAUN JOHNSON,<br><br>Plaintiff,<br><br>v.<br><br>TOMOCREDIT, INC.,<br><br>Defendant. | Case No. 26-cv-01172-HSG<br><br>**ORDER DENYING MOTION TO COMPEL ARBITRATION**<br><br>Re: Dkt. No. 27 |

Pending before the Court is Defendant's motion to compel arbitration. Dkt. No. 27-1 ("Mot."); Dkt. No. 29 ("Opp."); Dkt. No. 31 ("Reply"). The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b). For the reasons discussed below, the Court **DENIES** the motion.

## I.    BACKGROUND

In February 2026, Plaintiff Deshaun Johnson filed this putative class action against Defendant TomoCredit, Inc. *See* Dkt. No. 1 ("Compl."). Plaintiff alleges that Defendant violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, by sending unsolicited text messages to class members who have registered their numbers on the National Do Not Call Registry. *Id.* ¶¶ 3–4. Defendant moved to compel arbitration, arguing that Plaintiff agreed to arbitrate his claim when he registered for Defendant's financial credit-building services. *See* Mot. at 7–8.

## II.    LEGAL STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, establishes that a written arbitration agreement within its scope is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA

allows that a party "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that . . . arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

When a party moves to compel arbitration, the court must determine (1) "whether a valid arbitration agreement exists" and (2) "whether the agreement encompasses the dispute at issue." *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). The agreement may also delegate gateway issues to an arbitrator, in which case the court's role is limited to determining whether there is clear and unmistakable evidence that the parties agreed to arbitrate arbitrability. *See Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). In either instance, "before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019) (citing 9 U.S.C. § 2).

## III.    DISCUSSION

Defendant contends that Plaintiff agreed to arbitrate this dispute when he completed the online application for Defendant's services. *See* Mot. at 7. Plaintiff argues that (1) he was not presented with clear and conspicuous notice of the applicable Terms of Use during the application process; (2) "any consent provided by Plaintiff was revoked when Plaintiff ended his TomoCredit subscription and stopped accessing or using TomoCredit's website and services" over a year before the unsolicited messages in question; (3) his TCPA claim falls outside the scope of the arbitration agreement; and (4) the arbitration agreement is unconscionable. *See* Opp. at 7–8.

### A.    Formation of Agreement to Arbitrate

The party seeking to compel arbitration bears the burden of proving the existence of the agreement by a preponderance of the evidence. *See Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017). In determining whether an agreement was formed, the Court applies "general state-law principles of contract interpretation," without a presumption in favor of arbitrability. *See Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 742 (9th Cir. 2014) (quotation omitted). Under California law, a viable contract requires: (1) parties capable of

contracting; (2) their consent; (3) a lawful object; and (4) sufficient cause or consideration. *United States ex rel. Oliver v. Parsons Co.*, 195 F.3d 457, 462 (9th Cir. 1999).[1] "[I]f a website offers contractual terms to those who use the site, and a user engages in conduct that manifests her acceptance of those terms, an enforceable agreement can be formed." *Berman v. Freedom Fin. Network, LLC,* 30 F.4th 849, 856 (9th Cir. 2022).

Defendant introduces evidence that Plaintiff initiated an online application for its services where he was required to provide his email, phone number, address, and date of birth. Dkt. No. 27-1 ("Kim Decl.") ¶¶11–13. During this application, Plaintiff would have been taken to a "Review Your Application" page, where he had to affirmatively click "Submit" after checking a box stating "[b]y continuing I certify that I am 18 years of age, and I agree to the Terms of Use, Privacy Policy, and e-Sign." *Id.* ¶ 6, Ex. A. On that page, the Terms of Use were listed as a separate hyperlink in blue font, and that hyperlink appeared directly above the "Submit" button. *See id.* Defendant introduces evidence that Plaintiff could not have completed this application without checking the box and affirming that he agreed to the Terms of Use. *Id.* ¶ 15.

Defendant further introduces evidence that its Terms of Use contained an arbitration agreement: "To the extent permitted under federal law, you and we agree that either party may elect to arbitrate – and require the other party to arbitrate – any Claim under the following terms." *Id.*, Ex. B ("Terms of Use") at 10. The Terms of Use also included a right to reject the arbitration provision "by mailing a personally signed rejection notice" to Defendant. *Id.* Defendant searched its records and did not locate a rejection notice. Kim Decl. ¶ 16. Defendant argues that this process was sufficient to provide clear notice of the Terms of Use and arbitration agreement and that Plaintiff manifested his assent when he checked the box and clicked "Submit." Mot. at 12–13.

---

[1] The parties dispute whether Nevada or California state law applies. *Compare* Mot. at 11–12, *with* Opp. at 13–15. In addition, the underlying Terms of Use contain a New York choice-of-law provision. *See* Dkt. No. 27-1, Ex. B at 10. However, the parties seemingly agree that the analysis is the same under Nevada and California law, neither party invokes New York law, and both parties apply California law throughout their briefing. *See* Mot. at 12; Opp. at 14; Reply at 4 n.1. Given this, the Court will apply California law in this order, though it makes no difference which state's law the Court applies in this straightforward case.

United States District Court
Northern District of California

Defendant has met its burden of proving the formation of an enforceable arbitration agreement. Here, the Terms of Use hyperlink was "conspicuously distinguished from the surrounding text in bright blue font, making its presence readily apparent," *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 516 (9th Cir. 2023), and a checkbox to manifest assent with the terms was located directly above the "Submit" button, *cf. In re Tesla Advanced Driver Assistance Sys. Litig.*, No. 22-CV-05240-HSG, 2023 WL 6391477, at *4 (N.D. Cal. Sept. 30, 2023) (finding "hybrid browsewrap agreement where the terms of the agreement [were] hyperlinked above the [submission] button" was enforceable).

Plaintiff argues that Defendant's webpage "fail[ed] to provide the user with reasonably conspicuous notice that they [were] agreeing to the Terms of Use" because the disclosure was "smaller than the surrounding text and barely legible," the screen was "cluttered" with other information, the large buttons drew attention away from the text, and the hyperlink was the same color as the "Submit" button. Opp. at 17–18. But this dramatically overstates things: Defendant's screenshot of the relevant page demonstrates that this was a slightly off-white background with only a few other elements on the screen. *See* Kim Decl., Ex. A. There is also no evidence supporting Plaintiff's claim that "TomoCredit pressure[d] [users] into checking the box" just because the relevant disclosure of the Terms of Use appeared after a user had input some personal information and reviewed "multiple sets of screens." *See* Opp. at 17. Given the above, Defendant has met its burden of demonstrating that a valid arbitration agreement was formed.[2]

**B.      Delegation of Arbitrability**

Plaintiff argues that (1) his TCPA claim falls outside the scope of the arbitration agreement; and (2) the arbitration agreement is unconscionable. *See* Opp. at 22–28. Defendant contends that any such challenges have been delegated to the arbitrator. Mot. at 13–14.

Parties to an arbitration agreement "can agree to arbitrate 'gateway' questions of

---

[2] For purposes of this order, the Court assumes without deciding that Plaintiff did not terminate his obligations under the arbitration agreement when he stopped paying for Defendant's services. *See* Opp. at 18–22. Since it is obvious to the Court that there was no delegation of arbitrability and that Plaintiff's claim falls outside the scope of the arbitration agreement, the Court need not resolve the more complicated termination and revocation questions here.

4

United States District Court
Northern District of California

United States District Court
Northern District of California

'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010). "[W]hether the court or the arbitrator decides arbitrability is 'an issue for judicial determination unless the parties clearly and unmistakably provide otherwise.'" *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1072 (9th Cir. 2013) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)) (emphasis omitted).

Defendant's arbitration agreement states that "either party may elect to arbitrate – and require the other party to arbitrate – any Claim under the following terms." Terms of Use at 10. "'Claim' does not include disputes about the validity, enforceability, coverage or scope of this Arbitration Provision or any part thereof[;] . . . all such disputes are for a court and not an arbitrator to decide." *Id.* at 11. This strongly suggests that questions of scope and enforceability have been left for the Court to decide. Nevertheless, Defendant argues that there is an express delegation clause because the next sentence of the arbitration agreement also states that "[n]otwithstanding the foregoing, the term 'Claim' includes any dispute about the validity or enforceability of these Terms of Use, as a whole; any such Claim is for the arbitrator, not a court, to decide." Mot. at 13 (quoting Terms of Use at 11). The Court understands this to leave questions of validity and enforceability of the broader Terms of Use—not the arbitration agreement—to the arbitrator, but those questions are not relevant to Plaintiff's arguments. At minimum, these competing provisions show that there was not a clear and unmistakable delegation of arbitrability to the arbitrator. As a result, the Court will consider Plaintiff's scope arguments.

### C. Scope

Plaintiff argues that his TCPA claim is outside the scope of the arbitration agreement because it is "unrelated to the Terms of Use or his use of TomoCredit's services." Opp. at 24. Defendant asserts that Plaintiff's TCPA claim is "very clearly encompasse[d]" by the broad language of the arbitration agreement:

> A "Claim" means any legal claim, dispute or controversy between you and us that arises from or relates in any way to these Terms of Use, including, but not limited to, any dispute arising before the date

of this Arbitration Provision and any dispute relating to: (1) th[e] Site; (2) the events leading up to your use of the Site or any application for products or services from or through us (for example, any disclosure, advertisement, application, solicitation, promotion or oral or written statement, warranty or representation made by us); (3) an application for or denial of credit; (4) use of credit reports or other reports about you; (5) any product or service provided by or through us or third parties in connection and any associated fees; (6) our use or failure to protect any personal information you give us in connection with the Site or an application for products or services offered by or through us; (7) enforcement of any and all of the obligations a party hereto may have to another party; (8) compliance with applicable laws and/or regulations; or (9) the relationships resulting from the Site or any of the foregoing.

*See* Reply at 9 (quoting Terms of Use at 11). Defendant argues that Plaintiff's claim falls within the scope of the arbitration agreement because the allegedly unsolicited messages were "related to Tomo's products and/or services" and sent by Defendant after Plaintiff provided his phone number during the application. *See id.*

Critically, however, Plaintiff has introduced undisputed evidence that he did not provide Defendant with the -1907 phone number that received the unsolicited marketing messages. *See* Dkt. No. 29-1, Ex. A (screenshot of Defendant's database, showing a -8874 phone number, not the -1907 number that allegedly received the unsolicited texts); Dkt. No. 29-2 ¶¶ 4, 7 (declaration from Plaintiff stating he provided the -8874 number during the application process, not the -1907 number). Defendant did not address this point in its reply, let alone provide competing evidence.

Defendant fails to explain how claims regarding general marketing messages sent to a number Plaintiff did not provide to Defendant relate in any way to the underlying Terms of Use. If Plaintiff had provided the relevant number as part of his application, his claims might, for example, have related to (6): "[Defendant's] use or failure to protect any personal information [that Plaintiff] g[a]ve . . . in connection with the Site or an application for products or services offered by or through [Defendant]." Terms of Use at 11. But in the face of undisputed evidence that Plaintiff did not provide the relevant telephone number as part of his application, there is no basis for the Court to conclude that messages to that phone number relate to the Terms of Use or otherwise fall within the scope of the arbitration agreement. For example, the Court cannot identify (and Defendant does not point to) any language in the Terms of Use that relates to

United States District Court
Northern District of California

Defendant's use of a phone number Plaintiff never provided to send unsolicited marketing messages. *See* Compl. ¶¶ 27–37; *compare In re Jiffy Lube Int'l, Inc., Text Spam Litig.*, 847 F. Supp. 2d 1253, 1263 (S.D. Cal. 2012) (noting that "the fact that the [unsolicited] text message offered membership in a club that would provide discounts on an oil change does not establish that the text message was related to the contract governing [plaintiff's] oil change"), *with Regan v. Pinger, Inc.*, No. 20-CV-02221-LHK, 2021 WL 706465, at *10 (N.D. Cal. Feb. 23, 2021) (compelling arbitration of TCPA claim where "Defendant's communications . . . via Plaintiff's mobile number were expressly envisioned by the contract" and "Plaintiff used his mobile number to create his . . . accounts, and the [app] requires users to utilize their mobile number to operate the [app]").[3]

On these undisputed facts, the Court concludes that Plaintiff's TCPA claim does not "arise[] from or relate[] in any way to [Defendant's] Terms of Use," *see* Terms of Use at 11, and the Court **DENIES** the motion.[4]

## IV.   CONCLUSION

The Court **DENIES WITHOUT PREJUDICE** Defendant's motion to compel arbitration, Dkt. No. 27.

The Court further **SETS** a case management conference in this case and in related case no. 25-cv-11018-HSG on July 28, 2026, at 2:00 p.m.  The hearing will be held by Public Zoom Webinar.  All counsel, members of the public, and media may access the webinar information at https://www.cand.uscourts.gov/hsg.  All attorneys and pro se litigants appearing for the case management conference are required to join at least 15 minutes before the hearing to check in with the courtroom deputy and test internet, video, and audio capabilities.  The parties should be

---

[3] The Terms of Use reference a Privacy Policy that theoretically could encompass broader uses of Plaintiff's contact information for marketing purposes. *See* Terms of Use at 7.  But Defendant did not attach the Privacy Policy to the motion or otherwise suggest that it is relevant.

[4] However, renewal of this motion to compel may be warranted if facts develop during discovery showing, for example, that Plaintiff provided the -1907 phone number to Defendant during the application process. *See Lucas v. Hertz Corp.*, 875 F. Supp. 2d 991, 997 n.6 (N.D. Cal. 2012) (considering second motion to compel where first was denied "without prejudice because of evidentiary problems").

prepared to discuss whether there should be any further coordination across the cases in light of this ruling.  The Court also **DIRECTS** the parties in this case to file a joint statement by July 21, 2026, with a proposed schedule.

The Clerk is **DIRECTED** to e-file this order in case no. 25-cv-11018-HSG.

**IT IS SO ORDERED.**

Dated:  7/7/2026

HAYWOOD S. GILLIAM, JR.
United States District Judge

United States District Court
Northern District of California

8